No. 13,099.

THE CITY OF NEW ORLEANS VS. VICTOR KIENTZ.

SYLLABUS.

1.  The city of New Orleans having the undoubted right and authority to establish markets for public health and convenience by ordinance, and to lease the same, has the authority for the protection of its lessees, to pass an auxiliary ordinance, prohibiting parties from selling at or near the markets, products which are sold in the same.  Morano vs. Mayor, 2nd La., 219-220 ;  State vs. Saradat, 46th Ann., 700.

2.  Having the authority to absolutely prohibit parties from selling at the public markets the products sold thereat, it has authority with the consent of the lessees to permit them to sell the same at the markets, on condition of their paying each day for the privilege the price paid daily by the occupants of stalls, where the privilege is extended to all alike.

An ordinance granting such privilege does not impose a tax or compulsory license, as parties determine for themselves whether they shall sell or not.

A PPEAL from the Second Recorder's Court, City of New Orleans.
    —*Grandjean, J.*

*Charles H. La Villebeuvre,* Assistant City Attorney, and *Samuel L. Gilmore,* City Attorney, for Plaintiff, Appellee.

*Buck, Walshe & Buck* and *Sambola & Ducros,* for Defendant, Appellant.

The opinion of the court was delivered by

NICHOLLS, C. J.   Defendant appeals from a judgment against him by the Fourth Recorder of the City of New Orleans, condemning him to pay a fine of twenty-five dollars, or to an imprisonment of thirty days for having wilfully and unlawfully and maliciously violated Section 26 of Ordinance No. 4155, C. S., as amended by City Ordinance No. 12,632, which reads:

"That owners or persons in charge of any cart or wagon for the conveyance of vegetables to the public markets of this city, shall have the right to back the same up to the banquettes around said markets, except between the hours of seven o'clock and ten o'clock A. M., which time is set aside for the cleaning and keeping the markets in proper sanitary condition, and shall have the right to sell and deliver vege-

tables from such carts or wagons at wholesale only, by which is meant selling to dealers for resale, and shippers of vegetables; *provided,* that said owners, or persons in charge of carts or wagons, shall lease space and market room, not less than twelve and a half square feet in area, in said market, and pay to the Commissioner of Police and Public Buildings, through his inspector, collector or collectors, or the lessee or lessees, or his or their collector or collectors, for the space and market room so leased by them at the rate of two cents per day for each and every square foot of space or market room leased; *provided,* that said sum shall not exceed twenty-five cents per day to each owner, owners or person in charge of carts or wagons; *provided further,* that said owner or owners, or person or persons, in charge of such carts or wagons may deliver goods previously sold to occupants of stalls or stands during any hour without occupying space in said market, and without the payment of any market fees or dues, and, *provided further,* that in taking their positions, said carts or wagons be separated at least three feet in order to allow pedestrians to cross from one side of the street to the other, and that any violation of the above shall subject the offender to the penalty stipulated in Section 32 of this ordinance; *provided further,* that the owner or owners, or persons in charge of carts or wagons, who do not lease space and market room in said markets, as herein provided for, shall be subject to all the provisions of existing ordinances, and shall have all the rights now secured to them by Section 26 of Ordinance No. 4155, as it originally reads."

The article read, originally, as follows:

Section 26. "That each and every cart or wagon, for the conveyance of vegetables to the public markets of this city, shall have the right to back up to the banquettes alongside of said markets; *provided,* however, that between the hours of seven o'clock A. M. and two o'clock P. M., they shall not be permitted to make sales therefrom; may deliver goods previously sold to occupants of stalls or stands during any hour, and no market fees or dues shall be collected from said wagons, and *provided* further, that in taking their position they be separated at least three feet in order to allow pedestrians to cross from one side of the street to the other, and that any violation of the above shall subject the offender to the penalties stipulated in Section 32 of this ordinance."

Defendant filed an exception to the complaint, submitting to the court that all proceedings against him should be stayed and quashed, and the affidavit made be decreed null and void, illegal, and wholly defective, on which no prosecution can be had, for the reason that same is vague, and does not specifically charge the accused of what part or parts of the Ordinance No. 4155, Section 26, and amended by ·Ordinance 12,632, Council Series, he is accused and to be tried for. part or parts of the Ordinance No. 4155, Section 26, as amended by Ordinance 12,632, embraces a number of separate and distinct provisions and requirements, and the accused should be informed which of them, or which one of them, he is charged to have violated.

The exception was overruled.

Defendant, under reservation of the exception, answered. He pleaded "that he was not guilty of any matter provided for in Section 26, as amended, which he averred was absolutely illegal, null and void, and unconstitutional, for the reasons assigned by him."

He averred that he was engaged in the business of truck farming, or raising vegetables for daily consumption, and in the necessary management of his business brings the same, according to usage and custom which has prevailed in this city immemorably, to the public markets for sale to the retailers and persons having stalls in said markets, where they sell at retail prices to daily consumers; that he is informed, and believes, that the only violation of said pretended ordinance and ordinances, which he was charged to have violated, was the proviso that owners, or persons in charge of carts or wagons, shall lease space and market room not less than two and one-half feet in area in said markets, and pay to the Commissioner of Police and Public Buildings, through his inspector, collector or collectors, or the lessee or lessees, or his or their collector or collectors, for the space and market room so leased, both at the rate of two cents per day for each and every square foot of space or market room leased, etc.; that in so far as this ordinance under which he was attempted to be prosecuted imposes a payment of this sum per day, as a condition precedent to his right to sell at wholesale or retail to consumers, or others, the product of his own labor, it was absolutely null, void, and unconstitutional, for the reason that he could not be subjected, for the purposes of a condition precedent to his right to sell the products of his own labor, to the payment of any tax or license; that said ordinance, in this regard, purported and attempted to impose a tax or license for

revenue, and that whether it be such tax or license for revenue, it was absolutely null and void and unconstitutional; and, further, said ordinance should have been held, in this regard, illegal, null and void, as absolutely unreasonable, inequitable, unjust and oppressive on its face; that market space, or area, is for the benefit of the public except that actually covered by stalls, and the pretense of making him, for the privilege of backing his cart against the banquettes around the markets, rent a certain space of area, at the rate of two cents per square foot, was absurd, preposterous, and unreasonable on its face, wholly *ultra vires* on the part of the city of New Orleans, and null and void for this reason as well as for the reason that, if said exaction was intended as a tax or license for revenue, it was illegal and unconstitutional for want of power on the part of the city of New Orleans to impose it.

In view of the premises, he prayed that his exception be maintained; that said Section 26 of said ordinance, and the amendment thereto, be decreed illegal, null and void and unconstitutional.

### Opinion.

In the brief filed on behalf of the city, it is said, upon the authority of State vs. Dunbar, 43 Ann., 836, and State vs. Baker, 44 Ann., 79, that "the precision required in indictments for crime, before courts of record, is not applicable to affidavits against violators of municipal ordinances, before Recorder's Courts."

That is true, but we have nowhere said that an affidavit, charging a certain person simply with having violated a particular ordinance, and giving merely the number of the same, comes up to the requirements of the law.

An affidavit of that particular kind seems to be the one now generally adopted before the Recorders of the city of New Orleans.

We take this occasion to say that an affidavit so worded is grossly insufficient, and the Recorders should insist upon a more definite one.

The complaint should state wherein and in respect to what the particular ordinance has been violated.

The Constitution of the State authorizes all parties threatened with a fine, under an ordinance, to appeal to the Supreme Court when the lgeality of constitutionality of the fine has been urged in the Recorder's Court by the defendant.

Where that defense has been set up, and defendant has appealed from an adverse judgment, the record should be in a situation to enable this court to ascertain whether appellant is so situated as to entitle him to raise that particular defense.

An ordinance may be, to some extent, illegal or unconstitutional, and to some extent legal.

If the legal portion would have justified a charge and a judgment against defendant, he would have had no concern whether the other parts of the ordinance should be legal or not. State vs. Riley, 49 Ann., 1618.

If, however, the illegal portion should have been precisely that upon the strength of which the judgment had been rendered, the appellate court, not knowing upon what branch of the ordinance the judgment had been based, would assume, to defendant's irreparable injury, that it was justified by the law and the facts.

In the case at bar the admissions of parties, and the judgment of the court, have brought us to a knowledge of the legal situation.

It was admitted that defendant is a gardener; that having a cart, with vegetables, he was stationed in a place where, if the ordinance was legal, he should have paid the fee.

It was further admitted that he did not pay, but had refused to pay the same, upon the grounds stated in the demurrer.

The Recorder found, as a fact, that he had sold at retail, and refused to pay the fee provided for by the ordinance.

The matter before us is the legality of the judgment appealed from, rendered upon this state of facts.

The action we are dealing with is not one seeking to recover the fee or license, or tax, from the defendant. He has not paid, and the city is not attempting to force him to do so.

As matters stand, defendant, owner of a cart for the conveyance of vegetables to the public market, has backed the same up to the banquette around the market, and sold goods from such wagon at retail.

He was prohibited from doing so by Section 26 of Ordinance 4155.

Was the City Council authorized to pass this particular ordinance?

We think it was, for the reasons assigned by this court in State vs. Sarradat, 46 Ann., 700.

The city having established a public market, and leased the same to parties who had paid it a large amount for the market privilege, it was its duty and its right to protect its lessee in the premises. The ordin-

ance was an auxiliary ordinance for that purpose. As said in Morano vs. The Mayor, 2 La., 219: "No one would rent a stall to sell meat in the market house, or any of those stands, if butcher's meat, or oysters, could be sold in a temporary stall near the market house, or elsewhere, or sell oysters at any other stand."

But appellant says that the original Section 26 has been amended, and gardiners are now permitted to sell from their carts, each day, provided they lease, each day, a certain space in the market at a rate fixed, and pay the same to the Commissioner of Police and Public Buildings, or the market lessees or their collector, and the City Council is without authority to force him to lease such space and pay for the same.

There is no obligation imposed by the city on defendant to lease a space in the market, or to pay for the same.

He is perfectly at liberty, under the original ordinance, to back his cart up to the banquette and deliver his produce to the occupants of stalls, to whom he had previously sold them, without payment of any sum to any person.

He is under no obligation to make sales from his wagon at the banquette.

If he does so, it is a matter of pure choice on his part. If the city has the right to absolutely prohibit the making of sales from carts at the banquette, defendant can not complain that an absolute prohibition should have been changed into a conditional permission, unless such conditional permission should work a discrimination between parties similarly circumstanced.

We do not perceive, in the ordinance complained of, that a special right or privilege has been given to any one. We think the object of this conditional permission is obvious. As the purpose of the absolute prohibition was the protection, by the city, of its lessee from sales made from wagons at the banquette to the prejudice of his rights under the lease, it was competent for the city, with his consent, to have either repealed the prohibition altogether or to modify it to an extent which he might deem consistent with that protection, provided all outside parties should be placed upon an equality.

It is apparent that the lessee has consented that sales should be made from the wagons, on condition of the parties selling from the wagons being placed in the same position which they would occupy if they each occupied a stall inside the market.

The space referred to, as that which the wagon owner is to lease, is evidently that covered by a stall, and the price to be paid daily is that chargeable for a stall.

If the market would be able to draw pay from the wagons corresponding to the same number of additional stalls, his reasons for objections to sales from the wagons would disappear.

The only parties who would have cause to complain of this state of affairs would seem to be the lessees of actual stalls inside the market, by the increased number of sellers of produce.

We do not see that defendant is injured in any way by the change. He says he has been illegally condemned to pay a fine for not paying the fee demanded of him, but we think there is error in this.

It is true that the Recorder has found the defendant guilty of selling, at retail, without paying the fee provided for in the city ordinance, and it is true also that if he had paid the fee there would doubtless have been no charge brought against him, but the actual fact is, none the less, that he has been condemned for illegally selling vegetables, at retail, from his wagon backed up against the market banquette.

There is no coercion brought against him through this proceeding to make him pay the fee—only coercion to make him desist from selling, at retail, from his wagon.

Should there be any coercion towards making him pay a daily fee or rent, it would only be by way of indirect consequence or result, and an election to pay rather than to desist from making sales.

In one sense this may be said to be compulsory—that is to say unwillingly done by him, but in no sense can it be said that he was coerced by the ordinance into either making sales or paying for market space.

We are of the opinion there is no error in the judgment, and it is hereby affrmed.

Rehearing refused.